## GRANT v. THE STATE.

1. On the trial of a defendant indicted for gaming, where a witness testified, that he was chief of police of a town in this State, that while on duty as such he detected a crowd gaming in a back room, that when he went into the room the defendant was one of the party and had cards in his hand, that those present were much excited and dispersed quickly, and that the defendant had been away from the town for some time before the trial; and where the defendant admitted his presence at the game, but denied that he took part in it, there was no error in allowing the witness to testify that some months thereafter he visited a neighboring city where he met the defendant, and that the latter ran off as soon as he saw the witness.

2. The fact that the witness had no authority to make an arrest at that time and place, and that he may have intended to do so, would not render the evidence inadmissible. It would be for the jury to determine whether the flight of the defendant upon seeing the policeman who had interrupted the game of cards was due to a sense of guilt or to other reasons.

3. While, on proper occasion, the presiding judge has a right to interrogate a witness on the stand, this should not be done in such a way as would have a tendency to cast discredit upon the witness.

4. Where on cross-examination a witness was asked as to whether he had been previously convicted of gaming, and answered that he had pleaded guilty on one occasion but had not been convicted at any other time, it was error for the presiding judge to cross-examine the witness as to whether he had not been convicted twice, and, after the witness had left the stand, to explain to the jury that he had been under the impression that the witness had been twice convicted, but upon investigating the docket he found that the witness had pleaded guilty once, and in another case he had demanded an indictment by the grand jury, and that was the last entry the judge saw on the docket in reference to that case.

5. Upon proper request the court should instruct the jury in regard to determining the credibility of witnesses and weighing evidence; but an assignment of error in a petition for certiorari, that counsel requested the court in writing to charge two sections of the Penal Code, and one section of the Civil Code, specified by number only, and that the court charged one of them but refused the other two, will not require a reversal where one of the sections so specified relates to the subject of positive and negative testimony, but is not accompanied by any request to instruct the jury to consider the credibility of witnesses in connection therewith, and where the other section mentioned by number contains language as to "preponderance of evidence," not aptly adjusted, as it stands, to a criminal case.

Argued April 17, — Decided May 10, 1905.

Certiorari. Before Judge Lewis. Morgan superior court. March 15, 1905.

*Williford & Middlebrooks,* for plaintiff in error.
*Joseph E. Pottle. solicitor-general,* and *E. W. Butler,* contra.

LUMPKIN, J.   1, 2.  Robert Grant was indicted for gaming, and tried in the county court of Morgan county.   After conviction he carried the case to the superior court by writ of certiorari.   Upon the hearing the petition for certiorari was "disallowed and overruled," and a new trial refused.   Whereupon he excepted.   On the trial a witness was introduced who testified substantially as follows :   He was the chief of police of the town of Madison, and while on duty surprised a party of negroes gambling in a back room.   They were gathered around a box on which were money and cards.   He heard some one say, "put down," "that's my bet," etc., but did not know who made the remark, nor see any one handling the cards and money.   Defendant had cards in his hand. The witness struck a match and spoke to those present.   They were all very much excited and dispersed quickly.   He did not see the defendant take up any cards when he struck the match. Defendant had been away from town for some time before the trial.   The defendant did not deny being present at the game, but claimed that he was not a participant, and introduced evidence for the purpose of sustaining this defense.   The witness above referred to was recalled, and testified, that he was in Atlanta the summer preceding the trial (which was November 9, 1903), and saw the defendant, and that the latter ran off — went out of a side door as soon as he saw the witness.   The witness was not then acting as an officer, but went to Atlanta on pleasure, saw the defendant, and thought he would bring him home, when the defendant ran away from him.   This was objected to on the ground that the witness was not an officer in Atlanta, but only a citizen, and that he had no authority to arrest the defendant unless he was an officer and had a warrant for his arrest.   The objection was overruled and the evidence admitted.

"Evidence of circumstances, which are part of a person's behavior subsequent to an event which it is alleged or suspected he is connected with or implicated in, are relevant if the circumstances are such as would be natural and usual, assuming the connection or implication to exist."   Und. Cr. Ev. § 115.   In McAdory v. State, 62 Ala. 154, it was said, that "Any indications of a consciousness of guilt, by a person suspected of or charged with crime, or who may after such indications be suspected or charged, are admissible evidence against him."   In

People *v.* Welsh, 63 Cal. 167, 168, it is said that "the intention, like the act, may be proved by direct or indirect evidence of the circumstances connected with the crime.    Hence the conduct of the party before and after the principal fact in issue is admissible, not as a part of the res gestæ, but as a circumstance connected with the act indicating the guilty intent." Of course the conduct of the defendant may sometimes be a part of the res gestæ of the criminal act itself; but where the purpose is to show acts from which an inference may be drawn of a consciousness of guilt, they need not necessarily be at the time of or immediately after the alleged crime.    People *v.* Stanley, 47 Cal. 114, 118; Roscoe's Crim. Ev. § 18.    On the subject of flight and similar acts from which an inference of consciousness of guilt may be drawn, see *Hunter* v. *State,* 43 *Ga.* 483 (3); *Sewell* v. *State,* 76 *Ga.* 836; *Wynne* v. *State,* 56 *Ga.* 114 (5); Wharton's Crim. Ev. § 750.    The acts sought to be proved must not be so remote or apparently disconnected with the matter under investigation as to create a strong probability that they are the result of other motives than consciousness of guilt.    In *Kennedy* v. *State,* 101 *Ga.* 559, the accused desired to prove that he had not availed himself of an opportunity to escape from jail about a month before his trial.    This was properly excluded as being in the nature of a declaration by the accused in his own favor.    The passing remark there made as to flight immediately following upon the commission of the crime was not a ruling that only such flight could be proved.    A crime might be committed and some time elapse before suspicion was aroused or attention directed toward a particular person, or a criminal might be able to conceal his crime for a time, but his conduct when the crime was discovered or suspicion aroused might nevertheless be admissible.    In the present case the objection made was not on account of the lapse of time, but on the ground that the police officer of the town of Madison did not have authority to arrest the defendant in Atlanta.    This objection was properly overruled.    The policeman was the person who detected the game and the presence of the accused at it, and evidently intended to have him brought to trial.    Upon seeing him the defendant fled.    The authority or want of authority to make an arrest at that time and place on the part of the officer did not render the evidence inadmissible.    The defendant may

not have known of this want of authority, or, if he did, he may also have known that the witness could have caused his arrest by a lawful officer; and his flight was evidence for the consideration of the jury. It was subject to explanation; and the weight to be given it, or whether the jury would draw an inference of consciousness of guilt or not, was a question for them. State v. Moore, 101 Mo. 316, 317.

3, 4. Eli Tory was a witness for the defendant. On cross-examination he admitted that he had pleaded guilty to gambling on one occasion, but stated that was the only time he had ever been convicted. Thereupon the following colloquy occurred between the witness and the court. By the court: "You say that you have only been convicted once of gambling?" A. "Yes, sir." Q. "Haven't you been convicted twice?" A. "No, sir." Defendant's counsel objected to the court thus interrogating the witness before the jury, as having a tendency to discredit his testimony. After the witness left the stand the court said to the jury, "Gentlemen of the jury, when I asked the witness if he had not been convicted twice, I was under the impression that he had, but upon investigating the docket I find that he pleaded guilty once, and in another case he demanded indictment by the grand jury. That is the last entry I see on the docket in reference to that case. When I sentenced him I put a fine on him, because I thought he had been convicted twice."

In the use of a sound discretion a presiding judge may ask questions of a witness on the stand. But he should not do so in such a way as would have a tendency to discredit the witness, nor should he make remarks which would amount to an expression of opinion on the evidence. Gordon v. Irvine, 105 Ga. 145; Morrison v. Dickey, 119 Ga. 698; Potter v. State, 117 Ga. 693; Hubbard v. State, 108 Ga. 786; Harris v. State, 61 Ga. 359. The county judge in the present case indicated by his answer to the writ of certiorari that he thought the questions which he put to the witness and the statement which he made to the jury were not calculated to affect the credit to be given the witness, or injure the defendant. In this view, however, we can not concur with him. The form of the questions themselves partook somewhat of the nature of a cross-examination. The subsequent statement of the judge brought before the jury the fact that the witness

had on another occasion been charged with the offense of gambling and had demanded an indictment of the grand jury. There was no lawful evidence of this, and it may have had the effect upon the minds of the jury of inducing a belief that the witness was a professional or habitual gambler, or at least one who on more occasions than one had been charged with the offense of gaming. If evidence as to a former charge was admissible at all, it was error for the presiding judge to tell the jury what he found by an examination of the docket. Where the credit of a witness was under consideration, we think that what transpired was harmful error.

5. One allegation of error in the petition for certiorari reads as follows: "Upon the conclusion of the testimony, and before the charge to the jury, defendant requested the court in writing to charge the jury sections 984 and 985 of the Penal Code, and § 5146 of the Civil Code of Georgia. The court charged § 984, but refused the other two, which failure defendant says was error." Upon request duly made the presiding judge should instruct the jury as to the weighing of testimony and the credibility of witnesses. But it is at least doubtful whether this assignment of error would authorize a reversal. The sections of the code were merely mentioned by number. Section 985 is in regard to positive and negative testimony. Where the rule embodied in it is a proper one to be given under the evidence, the judge should also in connection with it give an instruction that the jury, in weighing the testimony of such witnesses, should consider and pass upon the question of their credibility. *Humphries* v. *State,* 100 *Ga.* 260, 263; *Southern Railway Co.* v. *O'Bryan,* 115 *Ga.* 659; *Cowart* v. *State,* 120 *Ga.* 510.

*Judgment reversed. All the Justices concur, except Candler, J., absent.*